NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-southern judicial district
No. 2017-0008


SAN-KEN HOMES, INC.

v.

NEW HAMPSHIRE ATTORNEY GENERAL, CONSUMER PROTECTION AND ANTITRUST BUREAU

Argued: January 25, 2018
Opinion Issued: October 16, 2018


Bernstein, Shur, Sawyer & Nelson, P.A., of Manchester (Michael A. Klass on the brief, and Gregory E. Michael orally), for the plaintiff.


Gordon J. MacDonald, attorney general (John W. Garrigan, assistant attorney general, on the brief and orally), for the defendant.


HANTZ MARCONI, J. The plaintiff, San-Ken Homes, Inc. (San-Ken), appeals a decision of the Superior Court (Ignatius, J.) requiring it to apply for registration or exemption with the defendant, New Hampshire Attorney General, Consumer Protection and Antitrust Bureau (Bureau), under the Land Sales Full Disclosure Act (Act), and to make certain improvements to Old Beaver Road in the Oakwood Common subdivision in New Ipswich. See RSA ch. 356-A (2009 & Supp. 2017). We reverse.

I

For context, we provide a brief overview of the provisions of the Act. The purpose of the Act is to "prevent fraud in the sale of house lots in the State." N.H.S. Jour. 373 (1970). In furtherance of that purpose, a subdivider of subdivided land of more than 15 lots may not offer or dispose of any lot before the subdivided lands are registered with the Bureau. See RSA 356-A:3, I(a), :4, I (2009). A "subdivider" is "a person who is an owner of subdivided land or one who offers it for disposition. Any successor of [a subdivider] who comes to stand in the same relation to the subdivided lands as his predecessor did shall also come within this definition . . . ." RSA 356-A:1, V (2009).

A subdivider must register subdivided land by submitting an application to the Bureau. See RSA 356-A:5 (Supp. 2017). Upon receipt of an application for registration, the attorney general must initiate an examination to determine whether, inter alia, "there is reasonable assurance that all proposed improvements will be completed as represented," including "evidence of adequate funds to complete any infrastructure, such as roads." RSA 356-A:7, I(b) (Supp. 2017). The attorney general must also determine whether the "general promotional plan is not false or misleading . . . and affords full and fair disclosure." RSA 356-A:7, I(c) (2009).

The Act allows for exemptions from registration under certain circumstances. The Act "shall not apply" to an offer or disposition of subdivided land of not more than 15 lots. RSA 356-A:3, I(a). In addition, a subdivider of subdivided land of no more than 50 lots may apply for an exemption from the registration and annual reporting requirements. RSA 356-A:3, I-a(a) (Supp. 2017). Such a subdivider "shall be entitled to an exemption" if certain conditions are met. RSA 356-A:3, I-a(b) (Supp. 2017). Further, the attorney general may exempt from any of the provisions of the Act any lots in a subdivision "if it finds that the enforcement of all of the provisions of [the Act] with respect to such . . . lots . . . is not necessary in the public interest and for the protection of purchasers" because of the "small amount involved or the limited character of the offering, or because such property, in the discretion of the attorney general, is otherwise adequately regulated" by town ordinances or state or federal statutes. RSA 356-A:3, II (2009).

"If, subsequent to the issuance of an exemption from registration . . . the bureau has reasonable grounds to believe that exemption in the particular case is not in the public interest, the bureau shall . . . revoke the exemption." N.H. Admin. R., Jus 1305.03(a). Grounds for revocation shall include the insolvency of the subdivider. N.H. Admin. R., Jus 1304.03(b)(3).

The attorney general may bring an action in superior court "[i]f it appears that a person has engaged in or is about to engage in an act or practice constituting a violation of" the Act. RSA 356-A:10, III (2009). The attorney

2

general may issue a cease and desist order, RSA 356-A:12, I (2009), or revoke a registration, RSA 356-A:13, I (2009).

In addition, any time the attorney general has "reasonable cause" to believe that the subdivider may be unable to complete the development, it may require the subdivider to "provide evidence of financial security" to assure the completion of the development, and any person aggrieved by the subdivider's failure to complete the development "may proceed on such bond . . . to recover damages." RSA 356-A:5, VI (Supp. 2009). Furthermore, "[a]ny subdivider who disposes of any lot . . . in subdivided lands in violation of [the Act] or who in disposing of any lot . . . makes an untrue statement of a material fact, . . . or omits a material fact . . . , is liable to the purchaser of such lot," RSA 356-A:16, I (2009), and "[a]ny purchaser, who is eligible for relief" may bring an action for injunction and other specified damages, see RSA 356-A:16, II (2009). The attorney general may intervene in any suit alleging a violation of the Act. RSA 356-A:10, IV.

II

The record supports the following facts. Oakwood Common is a 16-lot subdivision originally developed by 112 Chestnut Street, LLC (112 Chestnut). In June 2006, the New Ipswich Planning Board (Board) approved the subdivision, conditioned on 112 Chestnut paving to Town standards Old Beaver Road — the single road providing access to the subdivision's lots from the adjacent public way.

In August 2006, 112 Chestnut applied to the Bureau for a certificate of exemption from registration under the Act. In its application, 112 Chestnut represented that the "roadway servicing the subdivision ('Old Beaver Road') shall be constructed by [112 Chestnut] and held as a private way by the future owners of the Lots." The application stated that the subdivision would be constructed and completed in two phases: phase I, consisting of six lots "and attendant road work," to be completed by September 2006; and phase II, consisting of 10 lots "and attendant road work," to be completed by December 2007.

112 Chestnut established an irrevocable letter of credit to "guarantee completion of construction of [the] road . . . according to the specifications as shown" on the subdivision plan. 112 Chestnut stated that the letter of credit had been posted with the Town as assurance to secure the completion of the promised road improvement. Additionally, 112 Chestnut stated that, although the total cost of the promised improvement was not fully covered by the assurance, "a second Irrevocable Letter of Credit [would] be posted upon commencement of Phase II." The purchase and sale agreement included with the application provided that 112 Chestnut "shall have the obligation, which

obligation shall survive the delivery of the deed to BUYER, to have installed upon the Premises . . . a private roadway."

In October 2006, the Bureau granted a certificate of exemption to 112 Chestnut "as to the offer and sale of" the 16 lots "because of the limited character of the offering and because the subdivision is adequately regulated by municipal ordinances." See RSA 356-A:3, II.  112 Chestnut constructed the road but, contrary to the promise it made, the road did not meet the Town's required paving standards.  After 112 Chestnut developed and conveyed seven lots within the subdivision to third parties, it defaulted on its mortgage, and TD Bank, N.A., the mortgagee, foreclosed on the remaining nine lots.  For reasons that are unclear on the record, the irrevocable letter of credit posted with the Town to assure completion of Old Beaver Road as promised by 112 Chestnut expired.

In June 2014, San-Ken, which has no relationship to 112 Chestnut, purchased the remaining nine undeveloped lots from the bank at a foreclosure sale and recorded title to the property.  In August 2014, San-Ken's application to the Town for a building permit was denied, based upon a recommendation from the Board "that no further building permits be approved for the Old Beaver Road subdivision until such time as a road bond is posted or the road is completed."  At an August hearing before the Board, the Board's chair suggested that San-Ken "work[ ] with the homeowners with a plan for modifying the subdivision plan for road standards that [could] be met in time certain, and the Board [would] consider the modification."

On September 3, the Board held a hearing on San-Ken's application for modification of the Board's original conditions for Old Beaver Road.  As an alternative to the Board revoking the subdivision approval, Town counsel recommended that it entertain a motion to waive the prior road completion requirements and specifications on the condition that San-Ken complete certain improvements to the road at its own expense.

At a September 17 hearing, the Board unanimously approved a modification of the original subdivision approval for Oakwood Common by replacing the previous conditions in their entirety with five "clarifications and conditions" including:

2. The existing road constructed within the subdivision (with one course of asphalt), is satisfactory as a private road, with no second asphalt course required, subject to the following improvements to be performed within 90 days from the date of this approval by and at the expense of the owner of the 9 remaining unimproved lots in the subdivision (presently San-Ken Homes, Inc.):

4

- fix cracks by cleaning and filling
- seal coat the entire road
- repair all potholes[.]

Shortly thereafter, San-Ken completed the sealing and the pothole and crack repairs, thus satisfying all of the Board's requirements. In November, San-Ken applied for a certificate of exemption from registration. See N.H. Admin. R., Jus 1304.07. In a December letter, the Bureau stated:

It is the Bureau's position that the rules obligate the subdivider to provide for the completion of the roadways to established local standards. The planning board's decision does not serve to modify those established standards. Rather, it merely reflects the planning board's decision not to require that a road bond be in place as a precondition to the issuing of building permits. Such a decision neither alters the regulatory requirements set out in Jus 1304.07, nor requires the Bureau to ignore the clear language of the rule.

The original subdivider met its obligations to bond the completion of the roadway to local standards, absent which, the Bureau would not have issued the certificate of exemption. All those who have purchased homes in the Oakwood Common subdivision did so under the understanding that the purchase price included funds for the completion of the roadways to established town standards. It is fundamentally unfair for [San-Ken] to now seek to both reduce the standards to which the roadways will be constructed and then require the current homeowners to pay more money to complete the roadways to those lower standards.

(Footnote omitted.) Accordingly, the Bureau indicated that it would require San-Ken to pave the road to the original specifications promised by 112 Chestnut and approved by the Board in 2006. San-Ken disagreed with the Bureau's position but, in order to market its lots, it applied for an exemption "without prejudice and reserv[ing] all rights, defenses, and other claims including but not necessarily limited to" whether San-Ken is the successor subdivider, whether it is required to register its nine lots, and whether it is obligated to further improve the subdivision's road.

Thereafter, as part of an escrow agreement with the Bureau, San-Ken obtained a performance bond to guarantee completion of Old Beaver Road to specifications set forth in the escrow agreement in the event that San-Ken's instant appeal proved unsuccessful. The Bureau issued a certification of exemption in May.

San-Ken appealed to the trial court. San-Ken asserted that the Bureau lacked authority under the Act to require it to be registered or exempted, and to require it to make improvements to Old Beaver Road. Following a bench trial, the trial court found that "San-Ken's purchase of 9 of the 16 lots, [its] application . . . for building permits, negotiations with the Board for some improvements to Old Beaver Road, and commitment to create a homeowners association . . . [were] sufficient to demonstrate that San-Ken has come 'to stand in the same relation to the subdivided lands as [its] predecessor did.'" However, the court found that the Bureau had "no authority . . . to disregard and countermand the Board's modification of the original road standards."

The Bureau moved for partial reconsideration. The trial court reversed its original decision in part, finding that the Bureau was "within its authority under RSA 356-A to require the successor subdivider San-Ken to complete Old Beaver Road to the original specifications" and that, although the original seven purchasers "could have, and perhaps should have, appealed the Planning Board's 2014 modification, that failure to appeal [did] not obviate the authority of the Bureau to enforce the subdivision commitments made during the regulatory process." This appeal followed.

III

On appeal, San-Ken argues that the trial court erred in: (1) applying a mistaken standard of review; (2) finding San-Ken to be a successor subdivider under the Act; and (3) determining that the Bureau was within its authority to require San-Ken to further improve Old Beaver Road as a condition of obtaining a certificate of exemption.

Resolving these issues requires that we engage in statutory interpretation. We are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. See Woodview Dev. Corp. v. Town of Pelham, 152 N.H. 114, 116 (2005). We first examine the language of the statute, and, where possible, ascribe the plain and ordinary meanings to the words used. Id. When a statute's language is plain and unambiguous, we need not look beyond it for further indication of legislative intent, and we will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result. Appeal of Local Gov't Ctr., 165 N.H. 790, 804 (2014). Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole to enable us to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme. Id. We apply the same principles of construction in interpreting administrative rules. Appeal of Town of Pittsfield, 160 N.H. 604, 606 (2010). We review the trial court's interpretation de novo. See Appeal of Local Gov't Ctr., 165 N.H. at 804.

For purposes of this appeal, we assume without deciding that San-Ken, by purchasing nine lots in subdivided land from a bank at a foreclosure sale, became a "subdivider" within the meaning of the Act.  However, we disagree that San-Ken is a successor subdivider of 112 Chestnut.

The Bureau contends that under its authority to "protect purchasers" by assuring that "promises made by subdividers are kept," the "only way for consumer protection laws to be effective is by expressly not allowing bad actors opportunities to circumvent them."  (Quotation omitted.)  Thus, the Bureau argues, because 112 Chestnut "promised the original seven homebuyers that it would build the subdivision road to the full town standards," the Bureau has the regulatory authority to require San-Ken to complete the road.  The Bureau asserts that San-Ken, "[f]or all intents and purposes . . . has picked up where the previous subdivider left off and stands in the exact same shoes as [112 Chestnut] at the time of the foreclosure."

Neither the Act's purpose or plain language nor the regulations support the Bureau's position.  As set forth above, the purpose of the Act is to "prevent fraud in the sale of house lots."  N.H.S. Jour. 373 (1970).  In furtherance of that purpose, the provisions of the Act and its regulations operate prospectively to protect potential purchasers of homes in subdivided land.  Each application for registration or exemption under the Act is personal to the particular subdivider, including a successor subdivider.  As the rules provide, "[a]ny person who comes to stand in the same relation to the subdivision as the original subdivider shall be required to make separate application to the bureau for registration as a successor subdivider."  N.H. Admin. R., Jus 1306.19(a).  An exemption may be granted only as to those lots in the subdivision that, at the time the application is filed, the subdivider owns.  See N.H. Admin. R., Jus 1304.07(a)(5)a.

San-Ken applied for an exemption for the nine lots it owns in the Oakwood Common subdivision.  Under the regulations, San-Ken's obligations under the Act operate prospectively to future home buyers of the nine lots it purchased at the foreclosure sale.  Thus, we reject the Bureau's position that San-Ken stands "in the exact same shoes" as 112 Chestnut, as San-Ken never owned any of the seven lots developed by 112 Chestnut, nor did it have any relationship with 112 Chestnut.

We acknowledge that 112 Chestnut promised to the seven original home buyers in Oakwood Common that it would complete Old Beaver Road to Town standards and it obtained an irrevocable letter of credit to assure its completion; however, it did not fulfill its promise to complete Old Beaver Road. The Act sets forth remedies available to the attorney general to ensure that subdividers complete developments as promised, as well as remedies available to consumers who purchase lots in subdivided land.  However, there is no provision in the Act that allows the Bureau under the circumstances presented

7

to bind San-Ken to promises made by 112 Chestnut and we will not add language to the statute that the legislature did not see fit to include.

We conclude that the trial court erred as a matter of law in finding that the Act authorized the Bureau to require San-Ken to complete Old Beaver Road to the standard promised by 112 Chestnut as a condition of obtaining a certificate of exemption. Accordingly, we need not address the remaining issues raised.

<u>Reversed</u>.

LYNN, C.J., and HICKS and BASSETT, JJ., concurred.